*Mar. 1841.*

Beggs and another

v

Butler and another.

---

## Beggs and another *vs.* Butler and another.

To a usurious note executed by a principal and two sureties, and transferred by the payee to a nominal holder, the payee still being the party in interest sued at law by the nominal holder, by suit against the principal and sureties, with no proofs of the usury except the principal and payee, the sureties have no adequate defence at law and can come into this court to establish the usury,

Sureties upon an usurious note, joint and several in its obligation, may file a bill against the usurious lender, to discharge themselves

Mar. 1841.

Beggs and
another
v.
Butler and
another.

from their obligation upon the note, without making their principal a party to the suit.

The principal in a joint and several note may be a proper though he is not a necessary party to a bill, by the sureties against the holder to discharge themselves from their obligation upon the note, on the ground of usury, if the ⁵prayer of the bill goes no farther than to ask that the obligation of the sureties be discharged, leaving the obligation of the ⸝principal perfect and liable to＿be enforced as against him.

THE bill sets forth that in Sept. 1836, one Seth Starr borrowed of the defendant Adams $280, for which he agreed to pay three per cent per month; and to secure the sum executed a note to Adams, for $305,20. with John Beggs and Randolph Griswold as sureties, payable in three months, for which he received $280. When the note became due, Starr was unable to pay, and made an agreement with Adams to continue the loan for three months longer at the same rate, and Starr gave a new note with the complainants as sureties for $332,65 due at three months. When this second note became due, Starr procured a farther extension of the loan for three months, by giving his own note for thirty dollars, as the premium for such extension, leaving the secured note as it was. The bill alleges farther, that before the "act to prevent usury," went into operation, Adams made a pretended transfer of the note for $332,65 to one Bourne, who prosecuted it in August, 1837, and that Adams was in fact the plaintiff in interest.

This suit was settled in Sept. 1837, and Starr gave a new note to C. Tucker, (the plaintiff's attorney,) or bearer for $332,65, jointly and severally executed by Starr and the complainants, which new note was drawn payable at one year with interest. This note was afterwards altered without the know-

lege of the complainant Beggs, so as to make it mature in nine months. This new note is alleged to be a mere renewal of the former note, and also that it was pretended to be transferred by Adams or his attorney to the defendant Butler, without any valid legal consideration, who afterwards commenced a suit at law upon it against Starr and the complainants. The bill alleges that the note is in fact the property of Adams, and that the complainants executed the note as sureties for Starr, and that they cannot prove the usury therein, except by the testimony of Starr and Adams, neither of whom can be witnesses to prove the usury in the suit at law, and the complainants file their bill in this court for discovery and relief. To this bill, the defendants demur separately—the defendant Butler, on the ground that Starr should have been made a party to this suit, and also that the complainants have a complete remedy in a court of law—the defendant Adams, on the ground that Starr should have been made a party to this suit. All the notes are alleged in the bill to have been joint and several. The cause comes on upon the argument of the demurrer.

*C. H. S. Williams*, for complainant.

*H. A. Risley*, for defendant Butler.

*W. P. Mellen*, for defendant Adams.

The Vice Chancellor. The demurrers, admit the facts stated in the bill. We must then ascertain the case thus admitted; and we find that there was an usurious loan made by the defendant Adams to one Starr, which usurious loan was continued by re-

newals, and after one suit brought upon the usurious note, was again continued by a new note given in renewal of the former usurious note, that the complainants were mere sureties for Starr, and though the note has passed into other hands. Adams, the original usurious lender, continued during the whole time to be the equitable owner of the note, and that the complainants could not prove the usury without the testimony of Starr and Adams, who could not be examined at law. If this is the state of facts deemed to be admitted by the demurrers. It is difficult to perceive how, under the previous decisions of the court of Chancery, the demurrer can be sustained. It certainly does not appear from this statement that the complainants had an adequate remedy at law. The plaintiff in the suit at law was not the usurious lender, and it is not alleged that he was knowing of the usury he could not therefore be examined as to the usury, by the defendants at law, under the "act in relation to usury," of 1837. Adams being the actual owner of the note, and entitled to receive the amount collectted upon it, his testimony could not be enforced at law by the defendants in that suit, if Adams chose to throw himself upon such interest to avoid testifying. (Mauran vs. Lamb, 7, Cowen, 174.) Starr, the maker of the note and one of the defendants in the suit at law, was of course, not a competent witness in the suit at law, and there was no other witness whocould prove the usury. It is difficult to perceive under such a state of facts, what remedy the complainants had at law. This ground of demurrer therefore cannot be sustained.

The principal ground which seems to be relied upon by the demurrer is, that Starr is a necessary

party to this suit, and that the defendants have a right to demur to this bill, for want of such necessary party. To sustain this position, the defendants rely principally upon the case of Bailey vs. Inglee, and others, (2 Paige, 278.) The principles of the decision in that case are unquestionably sound, but it seems to me that they are hardly applicable to this. The Chancellor there says, " persons are necessary " parties when no decree can be made respecting the " subject matter of litigation, until they are before " the court, either as complainants or defendants ; or " when the defendants already before the court have " such an interest in having them made parties, as to " authorise those defendants to object to proceeding " without such parties." In this case, the complainants seek no decree, except to declare their liability upon the note null and void ; they expressly leave the defendants to enforce their rights upon the note as against Starr, and full liberty to proceed to judgment and execution at law upon the note as against Starr. They ask no decree which is to affect Starr in any way, either to increase or diminish his liability. The subject matter of the suit here, is the complainants liability upon the note, and a decree can be made in relation to that subject matter without having Starr, before the court. He is not therefore a necessary party under the first branch of the above rule. The defendants may have an interest in having Starr made a party, and particularly a party defendant, as if he was brought into court in that capacity, and his answer should fully disclose the usury, it would not avail the complainants; such answer could not be read as against the present defendants, though it is true that Starr might even though made a party de-

Mar. 1841.

Beggs and another
v.
Butler and another.

66

M ar. 1841.

Beggs and
another
v.
Butler and
another.

fendant be examined as a witness probably. The defendants have not *such an interest*, in having Starr made a party under the authority of later decisions, as will authorise them to object to proceeding without making him such party.

In the case before cited the Chancellor also says " that Rhodes was a necessary party, because he " was jointly liable with the complainant in the ac- " tion at law on the note." So say the defendants is the fact in this case, and so indeed it is. But it will be observed that in that case, the note under consideration was a partnership note, made in the name of a firm of which the complainant and two of the defendants were partners. The obligation of the three upon such a note, was only joint, and not joint and several. In this case the note is expressly stated to be joint and several, and that circumstance so far distinguishes this case from that of Bailey vs. Inglee and others.

This case seems to be quite similar to that of Miller vs. McCan, (7 Paige, 451,) and this bill is evidently framed upon the principles supposed to be settled in that case. Vice Chancellor Mosley, there reasoned upon the incongruity of the court of Chancery taking jurisdiction of one of several defendants in a suit at law, and leaving the other defendants to the jurisdiction of a court of law, and came to the conclusion that no decree could be made in such a case in the court of Chancery, without the presence of the other defendant in that court. The Chancellor, upon appeal, repudiated such resoning and reversed such decision. It seems to me that the principles of that case cover the whole ground presented by this, and must govern this court in its decision. The defen-

dants endeavor to strengthen their argument by an observation of the Chancellor in Perrine vs. Stryker, (7 Paige, 598.) That was a case where the principal and surety upon the note both joined as complainants, and the Chancellor held such joinder unobjectionable. He said the surety was a necessary party to the bill as a bill for relief, *whether he could file a bill in his own name or not.*

He does not certainly disaffirm the ability of the surety to file a bill in his own name without joining the principal. In this case a decree, respecting the subject matter of the suit, can be made according to the prayer of the bill, without having Starr before the court; and he is not a *necessary* party, though he doubtless might properly enough have been made a party. And I must come to the conclusion, also, that the defendants have not such an interest in having Starr made a party, as to authorise them to object to the complainants proceeding for the want of such party; it will therefore follow that the demurrers must be overruled with costs to be taxed.